A. S. PENDRY, APPELLANT, VS. A. D. WRIGHT ET ALS.,
APPELLEES.

A bill in equity filed to settle boundary lines between adjoining own-
ers of land, no "confusion of boundaries" being involved, but
only a dispute as to the location of the true boundary, it being a
section line established by the United States surveys, presents
only a naked question of title of which a court of chancery has
no jurisdiction.   The alleged fraudulent conduct of defendant in
attempting to establish a line other than the true line which he
has heretofore acknowledged, does not give equity jurisdiction.

Appeal from Circuit Court for Orange county.

Wright and others, respondents here, brought their bill
against appellant, alleging that they are the owners of a
tract of land described according to government surveys as
the west half of the northeast quarter, and the east half of

the northwest quarter of section 14, township 19, south range 26, east, containing 160 44-100 acres; that the land was conveyed by one Wylly to Doane in September, 1880; that complainants went into possession peaceably at the time the land was so conveyed and have so remained in possession ever since that time, and the appellant has not been in possession, he having surrendered possession of the portion now claimed by him to George W. Wylly, who conveyed to Doane. That appellant has in divers ways admitted and recognized the north line of the land occupied by them as the true and correct line, according to the survey made by the authority of the U. S. government, of the land so conveyed by Wylly to Doane, and that said north line is the correct line; that some eighteen or twenty rods south of that line there appears a line of marked trees across sections 13 and 14, which line of marked trees appellant now claims is the correct northerly line of complainant's land and claims to own the same down to said marked line; that he procured a survey to be made by the County Surveyor, whereby the line between the terminal points of said line of marked trees at the east and west of complainants' land was found and declared by the Surveyor and by himself to be the line of the government survey between said section 14 and section 11, and that appellant falsely pretended to have found at one of said terminal points a post which had been set by the government surveyors to mark the section corners, and he caused the said corner post to be set and erected as the true corner from which the east and west line should be run to designate the northern boundary of said section 14 and of said complainants' land, all which conduct with other actings and doings of appellant were fraudulent and designed by him to defraud complainants and to obtain a portion of their land; " Wherefore, (the bill reads,) the said A. S. Pendry per-

sists in laying claim to the tract of land lying between the
fraudulent survey and the true line and threatened to take
possession of the same by virtue of the so-called survey
made by the said Robinson, (County Surveyor,) against the
rights of your orators in the premises, and to the extin-
guishment of their title and interest in said tract of land."
This is the substance of the allegations.

The bill prays that appellant be restrained from taking
possession or attempting to take possession, or in any way
disturbing his quiet and peaceable possession of the said
tract of about eighteen rods wide as surveyed by the
County Surveyor, and from disposing or in anywise attempt-
ing to alienate, or encumber the same, and that the court de-
clare the boundary line so as to accord with the field notes
of the survey made by the United States.

An injunction was allowed. Appellant answered. Ex-
ceptions to the answer were filed, some of which were al-
lowed, and further answer required to be filed. Pendry
appeals from all the orders of the court on the ground that
the court of chancery has no jurisdiction of the matters
complained of in the bill.              .

*John W. Price* for Appellant.

*Alex. St.-Clair Abrams* for Appellees.

The bill in question does not allege a confusion of
boundaries as set forth by appellant. It sets up a determi-
nation of boundaries, and the appellant's assent thereto,
and his subsequent attempt to disturb the possession of the
appellee.

The bill clearly sets up an equity in the complainant.
He was in possession, and the boundary had been fixed
and agreed upon between the defendant and his (complain-
ant's) vendor. The attempted repudiation of this agreed

upon boundary, years after complainant had been in possession, was a fraud upon complainant and called for the interposition of a court of equity. A "particular circumstance of fraud" is set up in the bill in the attempted encroachment by the defendant upon the complainant.

If the confusion of boundaries has been occasioned not by the negligence of both, but by the fraud of one of the parties when, for instance, he has been gradually encroaching * * a court of equity will interfere. Leading Cases in Equity, Vol. 2, Part 1, 856.

But this is really not a case in which any confusion of boundaries is set up in the bill. On the contrary, the bill distinctly sets up that the boundaries had been and were clearly defined and agreed upon, and that the complainant went into peaceable possession under their vendor, George W. Wylly, with the defendant's knowledge and assent, but that the defendant is attempting to confuse the boundaries by a subsequent fraudulent survey and by threats to take possession of the strip of land, the ownership of which in the complainants had already been recognized by the defendant. On such a statement of facts equity will intervene to prevent the perpetration of the threatened wrong.

The boundary having already been agreed upon and complainants having purchased and taken possession without notice of any adverse claim, equity will protect them against any menace of defendant. Equity will interfere where the power is necessarily exercised incidentally in furtherance of another equity, (Perry vs. Pratt, 31 Conn., 433,) and the equity of complainants out of the defendant's original agreement as to the boundary with the complainants' vendor.

As shown by the bill the defendant has not only menaced the complainants' possession by a fraudulent claim of ownership over a large tract of land in complainants, but he

has gone to the extent of committing a trespass on the land by having a new boundary line surveyed and asserting ownership over the tract lying between the fraudulent line and the boundary agreed upon. Unless the defendant is enjoined from further proceedings of the kind he is guilty of a wrong or spoliation which precludes the possession or enjoyment of a right. It puts it in his power to destroy or obliterate the true boundary and deposes complainant of the enjoyment of his right of quiet and peaceable possession. Merryman vs. Russell, 2 Jones' Eq., 470 ; White & Tudor, Leading Cases in Equity, Vol. 2, Part 1, 864.

Equity will take jurisdiction in all cases in which the law does not afford a full, complete and adequate remedy. In some of the States by statutory enactment an adverse claimant to land not in possession may be forced by the party in possession to disclose the nature of his claim and thus settle the question of title. There being no statute of the kind in this State, the equitable interposition of the court becomes necessary to protect persons exposed to wrong and injury and loss by just such fraudulent claims as are set up by defendant, and relief from which is sought by the bill.

THE CHIEF-JUSTICE delivered the opinion of the court.

There is certainly no ground for the interposition of equitable jurisdiction in this case. The complaint is that plaintiffs are the owners of certain lands, the northern boundary of which has been recognized by appellant, and they occupy the land to this boundary, which they allege is the northern line of the section ; and that this line corresponds to the lines of the adjacent sections as they were established by the surveyors under the authority of the United States Government. They charge that appellant now claims to own a portion of this land, to wit : about 18 rods

wide; that he claims the line established by the United States instead of being on the northern boundary of the premises occupied by complainants is 18 or 20 rods south, and that he has induced a county surveyor to run this more southerly line and declare it to be the true boundary line, and has pretended to find a decayed post which he pretends is the original corner post, and pretends that it was found where it was originally set by the United States surveyor to mark the corner of the section; all which actings and pretences were falsely and fraudulently devised and contrived as a basis of a claim to the ownership of a part of complainants' land which appellant threatens to take possession of.

As complainants have suggested in their brief, this is not a case of " confusion of boundaries," but a menace of complainants' rights by appellant. The boundaries of the section are defined upon the minutes of surveys in the United States Land Office, and they cannot be affected by the alleged fraudulent conduct of appellant. The real controversy is over the true location of the line, and whether appellant is estopped by matter *in pais* to claim any portion of the land occupied by complainants, even if the government surveys do locate the section line further south. In other words, it is a claim of ownshership of land by both parties, the true boundaries whereof are matters of fact equally accessible to them, and the title and right of possession are cognizable in a court of law and not in a court of equity. It is a naked question of title of which a court of equity has no jurisdiction. Doggett vs. Hart, 5 Fla., 215 ; Wake vs. Conyers, 1 Eden, 331, with English and American Notes in 2 White & Tudor's L. Cas. in Eq., Part I, 850 to 864; 1 Story's Eq. Jur., 7th Ed., §§615, 622 ; Pomeroy's Eq. Jur., §§1384, 1385.

The decree is reversed and the bill must be dismissed.